

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-1312 and 08-1586

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*
*Cross-Appellant,*

v.

WILLIAM J. BENSON,

*Defendant-Appellant,*
*Cross-Appellee.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 7403—**Samuel Der-Yeghiayan**, *Judge.*

---

ARGUED OCTOBER 28, 2008—DECIDED APRIL 6, 2009

---

Before BAUER, RIPPLE and EVANS, *Circuit Judges*.

BAUER, *Circuit Judge.* The district court enjoined William J. Benson, a "tax protester," from promoting, organizing, or selling his "Reliance Defense Package" and "16th Amendment Reliance Package," which were based on the false premise that customers could stop paying federal income taxes and avoid or defeat prosecution by

relying on the materials in the Packages. However, the court denied the government's request to require Benson to divulge a list of his customers. We affirm the injunction, but reverse as to the customer list, and remand for further appropriate proceedings.

## I. BACKGROUND

Benson wrote a book titled, *The Law That Never Was*, in which he claims that the Sixteenth Amendment to the United States Constitution was never properly ratified. Benson packaged his book with several excerpts from state legislative histories and records from the national archives as well as court cases and other materials to create what he called the "Reliance Defense Package." He advertised the Package and its component parts for sale on his website, www.thelawthatneverwas.com. The entire Package was offered for sale for $3500. Benson branded a similar set of materials as the "16th Amendment Reliance Package," which was promoted and offered for sale on the website of the Free Enterprise Society.

The details of Benson's promotional claims will be more thoroughly discussed below, but they can be boiled down to two theories. Benson's first and primary theory was that the Sixteenth Amendment was never properly ratified because several states intentionally attempted to modify the language of the proposed amendment and so did not ratify the actual amendment proposed by Congress. Without the Sixteenth Amendment, Benson explained, the federal income tax system is unconstitutional

according to the Supreme Court. *See Pollock v. Farmers' Loan & Trust* Co., 157 U.S. 429 (1895). Benson stated that he does not file an income tax return and that his customers may choose to do the same.

Benson's second theory, which was alluded to on Benson's website and more thoroughly discussed in the Reliance Defense Package itself, was that an individual could not be successfully prosecuted if he truly believed he was not required to pay income taxes. Benson claimed that the Supreme Court held in *Cheek v. United States*, 498 U.S. 192 (1991) "that when a defendant had a good-faith belief he was not required to file, he must be permitted to present that belief to the jury." Benson also cited *United States v. Powell*, 955 F.2d 1206 (9th Cir. 1991) for the principle that the defendants' conviction for failing to file tax returns "**could not be sustained if the [defendants] sincerely believed they were not required to file—whatever their foundation for that belief**." And Benson promised that the Reliance Defense Package would allow customers to develop that sincere belief.

At the government's request, the district court granted summary judgement and issued an injunction against Benson; however the district court denied the part of the requested injunction that would have required Benson to turn over his customer list.[1]

---

[1] The injunction reads in part:

> The defendant, William J. Benson, individually and doing business as Constitutional Research Associates, and anyone
> (continued...)

## II. DISCUSSION

On appeal, Benson claims that he did not violate the statute the district court relied on to grant the injunction. He also argues that the injunction violates his First Amendment rights. The government counters that there was

---

[1] (...continued)
   in active concert or participation with him, are permanently enjoined from:

   (a) promoting, organizing or selling the "Reliance Defense Package" or "16th Amendment Reliance Package," which are abusive tax shelters, plans, or arrangements that advise or assist customers to attempt to evade the assessment or collection of their correct federal tax;

   (b) promoting, organizing or selling (or helping others to promote, organize, or sell) any other tax shelter, plan, or arrangement that incites or assists others to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities or unlawfully claim improper tax refunds;

   (c) making or furnishing (in connection with organizing, promoting, or selling any plan or arrangement) false statements about the excludability of any income or the securing of any other tax benefit by reason of participating in the plan or arrangement;

   (d) engaging in any other activity subject to penalty under the Internal Revenue Code; and

   (e) engaging in any other conduct that interferes with the administration or enforcement of the internal revenue laws.

Nos. 08-1312 and 08-1586                                   5

ample statutory and constitutional support for the injunction. The government's cross-claim contends that the district court erred by not requiring Benson to produce a list of his customers. We review a district court's grant of summary judgment *de novo* and its decision to grant an injunction for abuse of discretion. *United States v. Raymond*, 228 F.3d 804, 810 (7th Cir. 2000); *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987).

### A. Statutory Authority for the Injunction

A district court is authorized to enter an injunction against any person if it finds "(1) that the person has engaged in any [conduct subject to penalty under 26 U.S.C. § 6700], and (2) that injunctive relief is appropriate to prevent recurrence of such conduct." 26 U.S.C. § 7408(b).

#### 1. Violation of 26 U.S.C. § 6700

Section 6700 imposes a penalty on any person who (1) organizes (or assists in the organization of) any plan or arrangement, or participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement, and (2) in connection with such organization or sale, makes or furnishes a statement with respect to the allowability of any deduction or credit, the excludability or any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement (3) which the person knows or has reason to know is false or fraudulent (4) as to any material matter. 26 U.S.C. § 6700(a).

6                                     Nos. 08-1312 and 08-1586

Benson claims that he was simply urging political action and was not promoting any plan because he did not engage in affirmative conduct such as offering to help prepare trusts, false W-4 forms, false income tax returns, letters to harass the IRS, claims for tax refunds, etc., as some tax protestors have in the past. Benson is wrong, both legally and factually.

First, the definition of a plan for purposes of § 6700 is broad. *Raymond*, 228 F.3d at 811 ("any 'plan or arrangement' having some connection to taxes" (citing *Kaun*, 827 F.2d at 1147)). Courts have not been hesitant in finding tax protesters' activities to qualify as plans. *Kaun*, 827 F.2d at 1148 ("words 'any other plan or arrangement' are clearly broad enough to include a tax protester group"); *Raymond*, 228 F.3d at 811-12 (sale of program that told customers they could legally refuse to pay federal income tax was sale of an interest in a plan under § 6700); *United States v. Schulz*, 529 F. Supp. 2d 341, 348 (N.D.N.Y. 2007) (instruction guide on stopping employer withholdings was plan or arrangement), *aff'd*, 517 F.3d 606, 607 (2d Cir. 2008). Benson's plan was simpler than some prior tax protester schemes, but its purpose was the same—to evade tax liability. Instead of filing false tax returns, Benson's plan encouraged customers not to file a tax return at all. Such a *don't*-do-it-yourself kit does not require forms or filings. Here, the devil is not in the details. Like every other tax protester, Benson was selling an illegal method by which to avoid paying taxes; the details of that method are immaterial.

Second, Benson's materials were prepared in such a way so that the entirety of either Package could be sent to

the IRS if they began an investigation. The Reliance Defense Package included a customized Reliance Letter, which concluded:

> It is insanely unrealistic for someone like [**customer's name**] to believe that he would be required to file any forms with any state taxing agency or the Federal Government, when the 16th Amendment to the U.S. Constitution is an absolute complete total fraud as proven by **The Law That Never Was** Volume I and in excess of 17,000 documents etc. that [**customer's name**] **relies on as his STATE OF MIND, FRAME OF MIND RELIANCE, AND BELIEF.** The entire Reliance Program shall become a part of his permanent record.

Therefore, Benson was providing his customers with something to send to the IRS in an effort to avoid paying taxes. At least one taxpayer submitted the Reliance Letter and several other elements of the Reliance Defense Package along with the entire 16th Amendment Reliance Package to the IRS when questioned about failing to file an income tax return. The only distinction between Benson's plan and other plans is that Benson's materials were to be utilized after the IRS launched an investigation. So Benson *did* organize a plan or arrangement and participated in the sale of an interest in the plan or arrangement. 26 U.S.C. § 6700(a)(1).

Benson made numerous statements about the tax benefits to be enjoyed by customers as a result of purchasing his materials and participating in his plan or arrangement. 26 U.S.C. § 6700(a)(2)(A). In promoting his materials, Benson claimed that he "discovered that

8                                   Nos. 08-1312 and 08-1586

the 16th Amendment was not ratified" and to have documents "proving that the 16th Amendment . . . is an absolute, complete, total fraud." Benson also claimed on his website that:

> After serving time in federal prison for not paying his United States income taxes, <u>Bill Benson</u> still does not pay income taxes and yet our federal government chooses not to arrest him. Why? Because now he can use this book, which he has written: <u>'THE LAW THAT NEVER WAS'</u> in his defense.

Benson marketed the Reliance Defense Package on his website as a "compendium of information giving you the education and choice toward not filing an Income tax return. This compendium will give you the education to say **'Based** on my **state-of-mind, frame of mind, reliance** and **belief** I am obeying the dictates of Constitutional Law.'" Benson boasted that "[t]o date, the IRS has steadfastly refused to prosecute any person standing on this defense. Why do they do this? **Because they know they cannot win!!**" Benson also stated that "**included in your Package will be numerous DVDs and many other references proving that you are not a taxpayer!**"

   Benson knew or had reason to know that his statements were false or fraudulent. 26 U.S.C. § 6700(a)(2)(A). Benson's claim to have discovered that the Sixteenth Amendment was not ratified has been rejected by this Court in Benson's own criminal appeal. *United States v. Benson*, 941 F.2d 598, 607 (7th Cir. 1991) ("In *Thomas*, we specifically examined the arguments made in *The Law That Never Was*, and concluded that 'Benson . . . did not discover anything.'"

Nos. 08-1312 and 08-1586                                           9

(quoting *United States v. Thomas*, 788 F.2d 1250, 1253 (7th Cir. 1986))). "[W]e have repeatedly rejected the claim that the Sixteenth Amendment was improperly ratified. One would think this repeated rejection of Benson's Sixteenth Amendment argument would put the matter to rest." *Benson*, 941 F.2d at 607 (citations omitted).

Benson knows that his claim that he can rely on his book to prevent federal prosecution is equally false because his attempt to rely on his book in his own criminal case was ineffective. *Benson*, 941 F.2d at 607. Benson's book has been repeatedly discredited by the courts. *Miller v. United States*, 868 F.2d 236, 241 (7th Cir. 1989) ("We find it hard to understand why the long and unbroken line of cases upholding the constitutionality of the sixteenth amendment generally, and those specifically rejecting the argument advanced in *The Law That Never Was*, have not persuaded Miller and his compatriots to seek a more effective forum for airing their attack on the federal income tax structure." (citations omitted)).

Benson's statement that the government cannot successfully prosecute any person choosing not to file a tax return based on his belief that he is obeying the dictates of constitutional law is also false. This argument seems to be derived from *Cheek v. United States*, 498 U.S. 192 (1991), as discussed above. But *Cheek* only supports a defense that the defendant misunderstood the requirements of the tax code, not that he believed those requirements to be unconstitutional. *Id*. at 205-06 ("Claims that some of the provisions of the tax code are unconstitutional are submissions of a different order [from a good-faith misunder-

standing of the law]. . . . [D]efendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness . . . ."); *United States v. Dunkel*, 927 F.2d 955, 955-56 (7th Cir. 1991) (stating that *Cheek* held that "judges may rebuff defenses based on erroneous constitutional beliefs (such as that the 16th Amendment was not properly ratified)").

Benson argues that because he made no false statements, materiality is not at issue. We obviously disagree with Benson's premise and so must decide whether Benson's false statements pertained to a material matter. 26 U.S.C. § 6700(a)(2)(A). There is no matter more material to the sale of a tax avoidance package than whether the package effectively allows customers to avoid taxes. Benson's program was organized and promoted as a golden ticket whereby purchasers could avoid income tax liability and criminal liability. Benson's false statements regarding the vulnerability of the Sixteenth Amendment and the ability of his customers to refuse to pay taxes without being prosecuted were material because they would have a "'substantial impact' on the decision to purchase [his] tax package." *United States v. Gleason*, 432 F.3d 678, 683 (6th Cir. 2005) (citing *United States v. Buttorff*, 761 F.2d 1056, 1062 (5th Cir. 1985); *see also United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985) (material because "taxpayers who have been or are now being audited by the IRS or are involved in litigation because they relied upon appellant's representations should certainly have been informed about their complete lack of merit"). Even if some of Benson's followers purchased the Packages for educational purposes

Nos. 08-1312 and 08-1586　　　　　　　　　　11

or to take political action, as Benson claims, it is hard to believe they would have bought the materials knowing they were false.

### 2. Likelihood of Recurrence

In determining whether an injunction is appropriate to prevent recurrence of the illegal conduct, the court must consider the totality of the circumstances including:

> (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation and his degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such [a] transaction; (4) the defendant's recognition of his own culpability; and (5) the sincerity of his assurances against future violations.

*Raymond*, 228 F.3d at 813 (quoting *Kaun*, 827 F.2d at 1149-50) (internal quotations omitted). Lengthy discussion of this matter is not warranted. Reliance on Benson's false promises has deprived the government of revenue and has harmed Benson's customers who were deceived by the "siren call of the tax protester movement." *United States v. Engh*, 330 F.3d 954, 956 (7th Cir. 2003). Benson was at the heart of this scheme, which he knew or should have known had been thoroughly rejected by the courts. His violation of § 6700 was not isolated, but continuous since his false assurances about the efficacy of his products were posted on his website. Benson does not acknowledge his culpability, and, despite any assurances

to the district court, he is not likely to stop without an injunction. The district court adequately examined the necessary factors and did not abuse its discretion in concluding that an injunction was necessary. *See Kaun*, 827 F.2d at 1148.

### B. First Amendment

Of course, even though the injunction was properly granted under 26 U.S.C. § 7408, it still must meet the standards of the First Amendment. Benson claims that the injunction is a violation of his constitutional right to engage in political expression and that the government is trying to squelch his view that the Sixteenth Amendment was never ratified. The government contends that the injunction enjoins false commercial speech, which receives no First Amendment protection.

The First Amendment provides broad protection to speech, but not all speech. Commercial speech receives lesser protection and false or misleading commercial speech receives no protection at all. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 562-63 (1980). "For commercial speech to come within [the protection of the First Amendment], it at least must concern lawful activity and not be misleading." *Id.* at 566. When deciding if speech is commercial, appropriate considerations include whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983).

Case: 08-1312 Document: 00714584902 Filed: 08/05/09 Pages: 19
Case 1:04-cv-07403 Document 90 Filed 08/05/09 Page 13 of 19

Nos. 08-1312 and 08-1586 13

There is some debate about what the injunction in this case actually prohibits. Benson repeatedly asserts that it prevents him from distributing court opinions, legislative journals, and other public records, and from speaking about or expressing an opinion about those documents. We interpret the injunction as the government did at oral argument: that it prohibits "false statements made in connection with the sale of a product." The government clarified that the injunction does not prevent Benson from promoting his opinion in the public square. Neither is Benson prohibited from selling his book, *The Law That Never Was*, according to the government's brief.[2] Therefore, Benson is not prohibited from distributing his opinion that the Sixteenth Amendment was not ratified or public documents that he believes support his claim—both of which are contained in his book.

What Benson is prohibited from is engaging in unprotected false commercial speech. This interpretation is evidenced in the language of the injunction the government originally requested, prohibiting Benson

> from directly or indirectly, *by means of false, deceptive, or misleading commercial speech*:
>
> > (1) Organizing, promoting, marketing, or selling . . . the tax shelter, plan, or arrangement known as "The Reliance Defense Package," or any

---

[2] While Benson may sell his book, he may not promote its sale by claiming the ability to rely on it to avoid prosecution as he used to do on his website, or by making any other false promises.

other abusive tax shelter, plan or arrangement that incites taxpayers to attempt to violate the internal revenue laws . . . ;

(2) Engaging in any conduct subject to penalty under IRC § 6700, *i.e.*, making or furnishing, in connection with the organization or sale of an abusive tax shelter, plan, or arrangement, a statement [he] know[s] or [has] reason to know is false or fraudulent as to any material matter; and

(3) Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws;

(emphasis added). We read the injunction issued in this spirit. Therefore, the injunction prohibits "only false, deceptive or misleading commercial speech that is related to the provision of tax advice." *Raymond*, 228 F.3d at 815 (citing *Kaun*, 827 F.2d at 1152).

Benson was engaged in false commercial speech. As detailed above, Benson made many false statements about the benefits of buying his materials. Specifically, Benson promised potential customers that his products would free them from taxation and protect them from, or defend them in the event of, prosecution. These false statements were made for the purpose of promoting the sale of his materials and were therefore commercial. Benson purported to be selling a way to avoid tax liability; what he was actually selling was a way to increase tax and criminal liability for failing to pay taxes. That is false advertising, which may be banned consistent with the First Amendment. *In re R.M.J.*, 455 U.S. 191, 203 (1982)

("Misleading advertising may be prohibited entirely."); see *United States v. Schiff*, 379 F.3d 621, 630 (9th Cir. 2004) ("An advertisement is fraudulent when it misleads customers about the benefit of the offered product.").

To the extent that the injunction prohibits Benson from actually selling the Packages, as opposed to falsely advertising for their sale, this is appropriate because the sale of the Packages inherently involves false commercial speech. Their very names, Reliance Defense Package and 16th Amendment Reliance Package, imply that a customer may properly rely on the materials he is about to buy. And since the customer must know that he is buying information about taxes, he is being made to believe that he is buying a theory or defense on which he may rely as it pertains to his taxes. This belief is false. "Because the injunction at issue merely restrains [Benson] from advertising, marketing, and selling materials that are based on false and misleading theories under the guise of tax advice, [Benson's] First Amendment claim fails." *Kaun*, 827 F.2d at 1152.

Benson argues that he was simply encouraging the public to take political action. Nothing in this opinion prohibits him from doing as much. The government explains in its brief that the injunction "leaves Benson free to communicate a political message." Benson may openly share his views about the ratification of the Sixteenth Amendment or the tyranny of the federal government and IRS. It is not illegal for Benson to urge his followers to take political action. What is illegal, and enjoined, is for Benson to try to sell something he does not posses—the

golden ticket of tax evasion without consequences. Therefore, according to our great tradition of tolerating nutty opinions, the marketplace of ideas remains open to Benson; the commercial marketplace, however, is appropriately limited to speech that is not deceptive. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771-72 (1976) (First Amendment "does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely").[3]

### C. Customer List

The government contends that the district court should have required Benson to provide the government with a list of names and identifying information of persons who purchased the Reliance Defense Package or the 16th Amendment Reliance Package from Benson. Benson argues that the district court acted properly because requiring him to turn over his customer list is not authorized by any statute and would violate the First and Fifth Amend-

---

[3] Because we find that the injunction properly enjoins Benson from engaging in false or misleading commercial speech, we do not need to consider the alternate theory of whether the injunction is proper because it prohibits commercial "speech proposing an illegal transaction, which a government may regulate or ban entirely." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496 (1982) (citations omitted); *Buttorff*, 761 F.2d at 1066 ("Appellant's promotion of his trust does advocate the attempt to take tax benefits repeatedly declared invalid by the courts.").

ments. We review a district court's decision to grant or deny an injunction for an abuse of discretion. *Kaun*, 827 F.2d at 1148. However, "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

The district court denied the requested customer list order because it determined the order was not related to preventing future misconduct by Benson and was beyond the scope of Benson's wrongdoing. Whether true or not, the district court's observations are not relevant under the applicable law. District courts possess jurisdiction under 26 U.S.C. § 7402(a) to "issue . . . writs and orders of injunction . . . and such other orders . . . as may be necessary or appropriate for the enforcement of the internal revenue laws."[4]

The government has identified seven individuals who have received Benson's materials and have failed to file income tax returns. Reliance on Benson's materials has and will continue to irreparably harm Benson's customers, who have exposed themselves to increased tax and criminal liability, and the government, which is "not receiving required tax payments and [is] forced to expend resources to [identify and] collect the unpaid taxes." *United States*

---

[4] Section 7402(a) makes clear that the remedies it provides "are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce" the tax laws. The government was not required to seek the customer list through an administrative process as Benson argues.

*v. Schulz*, 517 F.3d 606, 607-08 (2d Cir. 2008). Without a customer list, it is unlikely that the government will identify each of Benson's customers who followed his advice before the statute of limitations has run. Benson will not be harmed by identifying his customers and it will serve the public interest for the government to receive a full list of Benson's customers, both to warn them of the falsity and ineffectiveness of Benson's claims, and to enforce the income tax laws. Production of Benson's customer list is also proper to monitor compliance with the injunction's requirement that Benson "mail . . . a copy of the injunction order to every person and entity to whom he sold or furnished the [Packages]." *See id*. We note that this is not the first time a promoter of false tax schemes has been required to divulge his customer list. *E.g. United States v. Bell*, 414 F.3d 474, 485 (3d Cir. 2005); *Schulz*, 517 F.3d at 607-08; *United States v. Kotmair*, Civ. No. WMN-05-1297, 2006 WL 4846388 at *7-8 (D. Md. Nov. 29, 2006), *aff'd*, 234 Fed. Appx. 65, 65-66 (4th Cir. 2007); *United States v. Harkins*, 355 F. Supp. 2d 1175, 1182 (D. Or. 2004); *United States v. Stephenson*, 313 F. Supp. 2d 1054, 1061 (W.D. Wash. 2004).

Such an order will not infringe on the First Amendment rights of Benson's customers. Benson's attempt to analogize this case to *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) is misplaced. Benson operated an Internet marketing scheme, not a membership organization. As in *Bell*, 414 F.3d at 485, Benson's "operation was primarily a commercial enterprise, not a political group. Producing a customer list does not offend the First Amendment because commercial transactions do not entail the

Nos. 08-1312 and 08-1586 19

same rights of association as political meetings." Benson's claim that divulging his customer list will violate his customers' right to receive and read what they choose also falls short. The government acknowledges that Benson's customers are free to receive, possess, read, and speak about materials from Benson and others challenging the validity of the Sixteenth Amendment or protesting the federal tax system. Additionally, as the government suggests, we expect the district court to enter an appropriate protective order to prevent public disclosure of the customers' identities.

Finally, Benson's Fifth Amendment claim need not delay us because the government asked the district court to issue an order of immunity in connection with Benson's compelled act of producing his customer list. The government's brief indicates that it remains open to this solution and we expect the district court to issue such an order upon remand, thereby eliminating Benson's Fifth Amendment claim.

### III. CONCLUSION

For the reasons discussed above, we AFFIRM the injunction imposed by the district court, but REVERSE as to the customer list, and REMAND for further appropriate proceedings.